IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIPUL B. PATEL; BHASKER T. PATEL and JYOTSNA B. PATEL, as co-trustees of the Jyotsna B. Patel Living Trust dated March 9, 2001; and CASTLE BLDRS.COM, INC., individually and on behalf of others similarly situated, | Case No. 1:17-cv-04008 <br><br> Honorable Amy J. St. Eve |
| Plaintiffs, | |
| v. | |
| ZILLOW, INC. and ZILLOW GROUP, INC., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

135909667.5

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

III.   ARGUMENT ...................................................................................................... 3

    A.    Legal Standard ............................................................................................. 3

    B.    The First Amendment Mandates Dismissal of All Claims ................................. 3

        1.    The Zestimate Is Zillow's Constitutionally Protected Expression of Opinion ................................................................................................ 4

        2.    The First Amendment Protects Zillow's Right to Publish Factual Information .......................................................................................... 8

        3.    The Injunction Plaintiffs Seek Would Be an Impermissible Prior Restraint ............................................................................................. 9

    C.    Plaintiffs Fail to Allege Required Elements for Each of Their Claims ................. 9

        1.    Plaintiffs Cannot State a Claim Under the Illinois Real Estate Appraiser Licensing Act (Count I) .......................................................... 9

        2.    Plaintiffs Cannot State a Claim for Intrusion Upon Seclusion (Count II) ........................................................................................... 11

        3.    Plaintiffs Cannot State a Claim Under the Illinois Uniform Deceptive Trade Practices Act (Count III) .............................................. 12

        4.    Plaintiffs Cannot State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV) ................................... 14

IV.    CONCLUSION ................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbasi ex rel. Abbasi v. Paraskevoulakos,*
    187 Ill. 2d 386 (1999) ...................................................................................10

*ACORN v. Resolution Trust Corp.,*
    No. 90 C 4472, 1991 WL 93638 (N.D. Ill. May 22, 1991) ....................................10

*Adams v. City of Alexandria,*
    878 F. Supp. 2d 685 (W.D. La. 2012).................................................................6

*Alexander v. U.S.,*
    509 U.S. 544 (1993).........................................................................................9

*Aliano v. WhistlePig, LLC,*
    No. 14 C 10148, 2015 WL 2399354 (N.D. Ill. May 18, 2015) .......................13, 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................................3

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    216 Ill. 2d 100 (2005) .....................................................................................14

*Aviation Charter, Inc. v. Aviation Research Grp./US,*
    416 F.3d 864 (8th Cir. 2005) .............................................................................6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).........................................................................................3

*Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.,*
    206 F.3d 980 (10th Cir. 2000) ...........................................................................9

*Biospherics, Inc. v. Forbes, Inc.,*
    151 F.3d 180 (4th Cir. 1998) .............................................................................5

*Browne v. Avvo Inc.,*
    525 F. Supp. 2d 1249 (W.D. Wash. 2007)........................................................5, 6

*Busse v. Motorola, Inc.,*
    351 Ill. App. 3d 67 (1st Dist. 2004) ..............................................................11, 12

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
    761 F.3d 732 (7th Cir. 2014) ...........................................................................14

*Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.,*
    354 S.W.3d 234 (Mo. Ct. App. 2011)..............................................................5, 6

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
   519 F.3d 666 (7th Cir. 2008), *as amended* (May 2, 2008) ......................................................9

*City of Lakewood v Plain Dealer Publ'g Co.*,
   486 U.S. 750 (1988).................................................................................................4

*Cobell v. Norton*,
   No. CIV.A.96-1285(RCL), 2003 WL 21978286 (D.D.C. Aug. 20, 2003)............................10

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
   149 F.3d 679 (7th Cir. 1998) ...................................................................................4

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
   233 F. 3d 981 (7th Cir. 2000) ...................................................................................7

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*,
   499 F.3d 520 (6th Cir. 2007) ...................................................................................5

*Cooney v. Chicago Pub. Sch.*,
   407 Ill. App. 3d 358 (1st Dist. 2010) .......................................................................12

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975)...............................................................................................9

*Galanis v. Starbucks Corp.*,
   No. 16 C 4705, 2016 WL 6037962 (N.D. Ill. Oct. 14, 2016) ......................................14

*Galvan v. Nw. Mem'l Hosp.*,
   382 Ill. App. 3d 259 (1st Dist. 2008) .......................................................................15

*Guinto v. Nestorowicz*,
   No. 14 C 09940, 2015 WL 3421456 (N.D. Ill. May 28, 2015) ....................................3

*Halperin v. Int'l Web Servs., LLC*,
   123 F. Supp. 3d 999 (N.D. Ill. 2015) .......................................................................14

*Haynes v. Alfred A. Knopf, Inc.*,
   8 F.3d 1222 (7th Cir. 1993) ...................................................................................4

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
   451 F. Supp. 2d 982 (N.D. Ill. 2006) .......................................................................12

*Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
   175 F.3d 848 (10th Cir. 1999) ...............................................................................5

*Jian Zhang v. Baidu.com Inc.*,
   10 F. Supp. 3d 433 (S.D.N.Y. 2014).......................................................................6

*Kim v. Carter's Inc.*,
   598 F.3d 362 (7th Cir. 2010) ...............................................................................14

*Kljajich v. Whirlpool Corp.*,
　　No. 15 C 5980, 2015 WL 12838163 (N.D. Ill. Sept. 25, 2015)........................................12, 13

*Locke v. Shore*,
　　634 F.3d 1185 (11th Cir. 2011) ............................................................................................8

*Lowe v. SEC*,
　　472 U.S. 181 (1985)....................................................................................................4, 7, 8

*Miami Herald Publ'g Co. v. Tornillo*,
　　418 U.S. 241 (1974)..............................................................................................................7

*Milkovich v. Lorain Journal Co.*,
　　497 U.S. 1 (1990)..................................................................................................................5

*Mortgage Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*,
　　999 A.2d 184 (N.H. 2010) ....................................................................................................9

*Org. for Better Austin v. Keefe*,
　　402 U.S. 415 (1971)..............................................................................................................9

*Pickup v. Brown*,
　　740 F.3d 1208 (9th Cir. 2014) ..........................................................................................7, 8

*Popp v. Cash Station, Inc.*,
　　244 Ill. App. 3d 87 (1st Dist. 1992) ...................................................................................13

*Robinson v. Toyota Motor Credit Corp.*,
　　201 Ill. 2d 403 (2002) ........................................................................................................15

*Rushman v. City of Milwaukee*,
　　959 F. Supp. 1040 (E.D. Wis. 1997)....................................................................................6

*Schwebe v. AGC Flat Glass N. Am., Inc.*,
　　No. 12 C 9873, 2013 WL 2151551 (N.D. Ill. May 16, 2013) .............................................14

*Serafine v. Branaman*,
　　810 F.3d 354 (5th Cir. 2016) ...............................................................................................8

*Sorrell v. IMS Health Inc.*,
　　564 U.S. 552 (2011)..............................................................................................................8

*Vega v. Chicago Park Dist.*,
　　958 F. Supp. 2d 943 (N.D. Ill. 2013) .............................................................................11, 12

*ZL Techs., Inc. v. Gartner, Inc.*,
　　709 F. Supp. 2d 789 (N.D. Cal. 2010) ...............................................................................5, 6

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ............................................................................................... passim

**STATUTES**

28 U.S.C. § 1404 ..........................................................................................................1

Communications Decency Act,
  47 U.S.C. § 230(c)(1) ............................................................................................9

Financial Institutions Reform, Recovery and Enforcement Act of 1989,
  12 U.S.C. § 3332 ............................................................................................10, 11

Illinois Consumer Fraud and Deceptive Business Practices Act,
  815 ILCS 505/1, *et seq.* ..............................................................................3, 14, 15

Illinois Real Estate Appraiser Licensing Act,
  225 ILCS 458/1, *et seq.* ...........................................................................2, 9, 10, 11

Illinois Uniform Deceptive Trade Practices Act,
  815 ILCS 510/3, *et seq.* ..........................................................................3, 12, 13, 14

**OTHER AUTHORITIES**

*Procure*, *Merriam-Webster.com*,
  https://www.merriam-webster.com/dictionary/procure ..........................................11

## I.    INTRODUCTION

Zestimate® home valuations are Zillow's predictions of selling price, created by algorithmically evaluating various data points and generating an estimate of the home's likely future selling price.  The data points used to generate these estimates are public facts (such as the recent selling prices of similar nearby homes) and submitted data (such as listings data or information from users about additional rooms not yet reported to tax authorities).  Zestimates are Zillow's opinion and are speech protected by the First Amendment, just like a newspaper editorial about the value of a new public works project, a search engine's ranking of relevant search results, or a financial publisher's opinion of the value of a company's stock.

Further, and even if the First Amendment did not apply, Zillow is not an appraiser and Zestimate home valuations are not appraisals subject to state law licensing schemes.  These licensing schemes apply to appraisals conducted for clients to support real estate financings or transactions.  The law plainly does not prohibit everybody everywhere from stating what they think a home is worth.  Zillow does not assess homes onsite and does not provide advice to specific clients.  It clearly states on its website that Zestimates are not to be used to support real estate financings and explains the limits of Zestimates as predictors of selling price.

Plaintiffs are home owners and builders in the Chicago area who think that their homes are worth more than their Zestimates.  Perhaps trying to work around obvious First Amendment concerns, Plaintiffs try to shoehorn their dissatisfaction with their homes' Zestimates into various state law claims.  These efforts fail, both because the First Amendment bars their claims and any injunction restraining speech, and also because they simply fail to allege the required elements.[1]

---

[1] Zillow expressly preserves its rights under its Terms of Use to move to transfer venue to federal court in King County, Washington pursuant to 28 U.S.C. § 1404 and to assert that Washington law applies.  Users of Zillow.com who create accounts assent to Zillow's Terms of Use.

## II.    BACKGROUND

Zillow.com is a website operated by Defendants Zillow, Inc. and Zillow Group, Inc. (collectively "Zillow") that publishes information about homes, including Zestimate home valuations. Compl. ¶ 4, Exs. 1-6. A Zestimate is "Zillow's *estimated* market value for an individual home," and it is based on a "proprietary" computer "algorithm" that Zillow uses to analyze "millions of public and user-submitted data points." *Id.* ¶ 20, Ex. 6 (emphasis added). Zillow's website states that a Zestimate "is not an official appraisal." *Id.* Ex. 6.[2] The information used for the Zestimate is gleaned from public records and from data submitted by users, including home owners and listings information providers. *See* Zillow, Home Facts Information, https://www.zillow.com/wikipages/Home-Facts-Information (last visited June 12, 2017). Zillow also publishes profiles about homes, which are sometimes accompanied by advertisements for real estate agents. Compl. ¶ 42, Exs. 1-5.

Plaintiffs bring this action on behalf of themselves and a putative class of similarly situated individuals. *Id.* ¶ 7. Plaintiffs allege they own five homes in the Chicago area that are profiled on Zillow.com. *Id.* ¶¶ 1-3, Exs. 1-5. Three of Plaintiffs' homes are listed for sale on Zillow.com and two are designated as "off market." *Id.* Exs. 1-5. Zillow calculated and published Zestimates for all of the homes and, for each of those listed for sale, the Zestimate was less than the alleged asking price. *Id.* Exs. 1, 2, 4. Count I alleges that Zestimates are "appraisals" and are unlawful under the Illinois Real Estate Appraiser Licensing Act. *See* Compl. ¶¶ 13-22. Count II asserts that Zillow is not entitled to publish home profiles or

---

[2] *See also* Zillow, What is a Zestimate® home value?, Zillow Help Center, https://zillow.zendesk.com/hc/en-us/articles/203512140-What-is-a-Zestimate-home-value- (last visited June 12, 2017) ("The Zestimate is not an appraisal and you won't be able to use it in place of an appraisal, though you can certainly share it with real estate professionals. It is a computer-generated estimate of the worth of a house today, given the available data. Zillow does not offer the Zestimate as the basis of any specific real-estate-related financial transaction. Our data sources may be incomplete or incorrect; also, we have not physically inspected a specific home. Remember, the Zestimate is a starting point and does not consider all the market intricacies that can determine the actual price a house will sell for.").

Zestimates without homeowners' permission and that, by doing so, Zillow is intruding on

Plaintiffs' seclusion. *See* Compl. ¶¶ 29, 23-38. Count III claims that "the usage of the

'Zestimate' tool"; "the gathering, compiling, assessment and dissemination" of "financial

information" [i.e., the data upon which Zestimates are based]; the refusal to remove or change

Zestimates at Plaintiffs' request; and the publication of Zestimates without consent violate the

Illinois Uniform Deceptive Trade Practices Act. *Id.* ¶¶ 42, 39-44. Count III also faults Zillow

for allegedly not disclosing Zillow's relationship with real estate agents who advertise on the site

and for using purported confusion about Zestimates to help those agents generate business. *Id.*

¶¶ 42-44. Finally, Count IV is based on the same facts as Counts II and III, but claims a

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id.* ¶¶ 45-52.

### III.    ARGUMENT

#### A.    Legal Standard

On a motion to dismiss, factual allegations are taken as true, but they "must be enough to

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A plaintiff must "provide the

grounds of his entitlement to relief" with more than "labels and conclusions, and a formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "[O]nly a complaint

that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679. Claims that are not cognizable under the circumstances pled must be dismissed with

prejudice. *See Guinto v. Nestorowicz*, No. 14 C 09940, 2015 WL 3421456, at *1 (N.D. Ill. May

28, 2015).

#### B.    The First Amendment Mandates Dismissal of All Claims

Plaintiffs' claims all attempt, in various guises, to impose liability on Zillow for

publishing statements about the likely selling price or attributes of Plaintiffs' homes. The claims

thus attack speech, and they do so precisely because the speech communicates assertions that Plaintiffs dislike (chiefly that, in Zillow's opinion, Plaintiffs' homes are not as valuable as Plaintiffs think they are, Compl. ¶ 33). The First Amendment, however, fully protects opinions in the form of predictions such as Zestimate home valuations; it fully protects republishing facts such about Plaintiffs' homes; and it prohibits the entry of prior restraints, such as the injunction sought by Plaintiffs. Plaintiffs' claims must therefore be dismissed with prejudice.

## 1.    The Zestimate Is Zillow's Constitutionally Protected Expression of Opinion

The First Amendment shields a speaker from liability for expressing opinions. "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture or surmise, rather than [a false] claim[] to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc*., 8 F.3d 1222, 1227 (7th Cir. 1993). In fact, the Supreme Court has "squarely held that the expression of opinion about a commercial product . . . is protected by the First Amendment." *Lowe v. SEC*, 472 U.S. 181, 210 n.58 (1985). This is why the news and opinion pages of a newspaper do not become "commercial speech" when they discuss the merits of a third party's product. Likewise, publishers do not lose First Amendment protection merely because they are supported by advertising or because they profit from the speech. *See, e.g.*, *City of Lakewood v Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988).[3]

Predictions about an item's future sale price—which is what estimates of market value are—inherently constitute "conjecture, or surmise," *Haynes*, 8 F.3d at 1227, and thus are opinion. This is why many courts have held that estimates of the value of another's good or service are opinion and are not actionable, whether as libel or other claims. For example, all of

---

[3] Expressing opinions about other people's products is not treated as less-protected "commercial speech" unless the speech "propose[s] a commercial transaction between [the speaker] and [any] customers." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 686 (7th Cir. 1998) (holding that financial publisher of investment advice was not engaged in commercial speech).

the following were held to be opinions protected by the First Amendment:

- Statements by a credit rating service about the creditworthiness of bonds. *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 853 (10th Cir. 1999); *see also Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007).

- A company's projections about the value of another company's stock. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184-85 (4th Cir. 1998).

- A technology advisor's ranking of a software vendor as a "niche player." *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 801-02 (N.D. Cal. 2010).

- Avvo's ratings and classifications of attorneys. *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1252 (W.D. Wash. 2007).

- Better Business Bureau ratings of businesses. *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 242-43 (Mo. Ct. App. 2011).

Zillow's Zestimate home valuation is an opinion of value, just like the cases above. This is clear from the context and language of Zillow's website, where the Zestimates appear. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-21 (1990). Zillow calls the values it assigns to homes "Zestimates," a made-up word that itself suggests (a) an estimate (b) reached by Zillow. Zillow also prominently discloses that Zestimates are "Zillow's *estimated* market value for an individual home," which should be used as "a *starting point* in determining a home's value." Compl. Ex. 6 (emphases added). Zillow emphasizes that Zestimates can change with the input of additional data, *id.* Exs. 3 & 5, and it publishes the historical accuracy (and inaccuracy) of Zestimates, *id.* Ex. 6. Zillow encourages users to post their own estimated value if they think Zillow's valuation is too low—or too high. *See* Zillow, What is a Zestimate? Zillow's Zestimate Accuracy, https://www.zillow.com/zestimate/#what (last visited June 12, 2017).

Nor are Zestimate home valuations "sufficiently factual to be susceptible of being proved true or false." *Milkovich*, 497 U.S. at 21. A Zestimate is a prediction of a home's selling price. It cannot be proven "true" or "false" at the time it is published because a home's actual

market value is unknowable until a sale has occurred. Predictions, regardless of whether they turn out to be true or false, are protected opinions since "predictions about future events are fraudulent only if the speaker knows of facts that will prevent the prediction from coming true." *Rushman v. City of Milwaukee*, 959 F. Supp. 1040, 1045 (E.D. Wis. 1997) (striking down as unconstitutional ordinance prohibiting "predictive arts"). There is no such allegation here. Just as "doctors and insurance companies estimating how long someone might live, auto mechanics opining as to how long your brakes will last, even lawyers predicting a jury's likely verdict" "sometimes predict the future," so does Zillow, when it predicts a home's sale price. *Adams v. City of Alexandria*, 878 F. Supp. 2d 685, 691 (W.D. La. 2012). And as with doctors, mechanics, and lawyers, the constitution allows "no government prohibition" on Zillow from "gazing into the future and voicing [its] beliefs as well." *Id.*

Ratings based on facts are still opinion, because Zillow exercises judgment and discretion in determining the factors and weightings in its proprietary algorithm.[4] *See Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 870 (8th Cir. 2005) (although the defendant's critique of the plaintiff "relies in part on objectively verifiable data, the interpretation of those data was ultimately a subjective assessment, not an objectively verifiable fact"). The resulting predicted values are therefore "by their very nature, subjective and debatable." *Browne*, 525 F. Supp. 2d at 1252 (concluding, with respect to Avvo, that "a reasonable person would understand that two people looking at the same underlying data could come up with vastly different ratings depending on their subjective views of what is relevant and what is important"); *see also Castle Rock Remodeling, LLC*, 354 S.W.3d at 242-43 (noting that "[a]lthough one may disagree with

---

[4] For purposes of First Amendment protection, designing an algorithm to generate a prediction is no different from generating it via other means. *See Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2014) (search results based on an algorithm are protected opinions because the "algorithms themselves were written by human beings" and "inherently incorporate . . . judgments"); *ZL Techs.*, 709 F. Supp. 2d at 798 (a computer-driven ranking is a protected opinion because "the mathematical model reflects subjective assessments by [the speaker] that are not verifiable, provable facts").

[the Better Business Bureau's] evaluation of the underlying objective facts [that inform its rating of a business], the rating itself cannot be proved true or false [and thus] is protected as opinion under the First Amendment"); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (because editorial judgment is protected by the First Amendment, invalidating as unconstitutional a Florida statute requiring newspapers to provide political candidates with a right of reply to critical editorials).

Finally, the government cannot require Zillow to obtain a real estate appraiser's license in order to speak to the public about property values (although as Part III.C.1 explains, Illinois law does not actually require such a license). Licensed appraisers may have diminished First Amendment protection when they "take[] the affairs of a client personally in hand and purport[] to exercise judgment on behalf of the client." *Lowe*, 472 U.S. at 232 (White, J., concurring in the judgment). But when "the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual," regulation of the speech would "become[] regulation of speaking or publishing as such," subject to the First Amendment's protections. *Pickup v. Brown*, 740 F.3d 1208, 1227 (9th Cir. 2014) (quoting *Lowe*, 472 U.S. at 232 (White, J., concurring in the judgment)).

This is why the Seventh Circuit has stated that requirements of "[r]egistration for impersonal advisors" (as opposed to professionals hired by individual clients) would raise "serious constitutional questions" "because registration operates as a form of prior restraint, which bears a strong presumption of unconstitutionality." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 233 F. 3d 981, 991 (7th Cir. 2000). What is true of registration is even more clearly true of the licensing requirements that Plaintiffs contend apply to Zillow, since licenses are generally more burdensome on speakers. "There is a difference, for First Amendment purposes, between . . . professionals' speech to the public at large versus their

direct, personalized speech with clients." *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011); *see also Serafine v. Branaman*, 810 F.3d 354, 360 (5th Cir. 2016); *Pickup*, 740 F.3d at 1227.

Home buyers and sellers are not Zillow's clients. Zillow is not "tak[ing their] affairs . . . personally in hand and purport[ing] to exercise judgment on [their] behalf." *Lowe*, 472 U.S. at 232 (White, J., concurring in the judgment). Instead, like a financial journalist, Zillow is speaking *about* property owners rather than speaking to them or speaking on their behalf. Zillow is therefore "entitled to robust protection under the First Amendment—just as any person is." *Pickup*, 740 F.3d at 1227 (referring to speech to the public by other professionals).

**2. The First Amendment Protects Zillow's Right to Publish Factual Information**

Plaintiffs also seek to hold Zillow liable for publishing home profiles containing facts about their homes without their permission and refusing to remove them upon request. Compl. ¶¶ 15, 24, 31, 42, 47. However, "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). Further, here the facts about homes listed in the home profiles come either from public records or from Zillow's users and providers of listings information. *See* Zillow, Home Facts Information, https://www.zillow.com/wikipages/Home-Facts-Information/ (last visited June 12, 2017) (Zillow's "information is compiled from public records" and homeowners can "update [their] own information"). Although Plaintiffs inaccurately contend in conclusory fashion that the information is "private," *see* Compl. ¶¶ 23-38 (Count II), Plaintiffs do not allege that any of the information Zillow publishes in its home profiles is false or derives from any place other than public records and Zillow users. And even otherwise private facts are protected when the information is already public, since "interests in privacy fade when the information already

appears on the public record." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 486-97 (1975).[5]

### 3. The Injunction Plaintiffs Seek Would Be an Impermissible Prior Restraint

The First Amendment requires dismissal of Counts I and III for the additional reason that the only remedy sought on those claims—an injunction—is an unconstitutional prior restraint. Plaintiffs seek to enjoin Zillow to immediately remove all Illinois Zestimates, Compl. ¶ 22 (Count I), and to refrain "from posting 'Zestimates' relative to Plaintiff and the Class' [sic] property," *id.* ¶ 44 (Count III). Permanent injunctions that prohibit speech are "classic examples" of prior restraints. *Alexander v. U.S.*, 509 U.S. 544, 550 (1993). And "[d]esignating the conduct as an invasion of privacy . . . is not sufficient to support" a prior restraint. *Org. for Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971). Indeed, "[e]ven when confidential information has allegedly been obtained unlawfully by the publisher, courts have invalidated prior restraints." *Mortgage Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*, 999 A.2d 184, 196 (N.H. 2010). The constitutional protection against prior restraints is even more clearly present when the information is not "confidential," and was obtained lawfully.

### C. Plaintiffs Fail to Allege Required Elements for Each of Their Claims

#### 1. Plaintiffs Cannot State a Claim Under the Illinois Real Estate Appraiser Licensing Act (Count I)

In Count I, Plaintiffs assert that Zillow violated the Illinois Real Estate Appraiser Licensing Act ("IREALA"), 225 ILCS 458/1 *et seq.* (2002), by purportedly conducting real estate appraisals without an Illinois appraiser's license. Compl. ¶¶ 1-3, 15. Plaintiffs advance an absurd reading of IREALA that would make any person who shares an "opinion of value" about a piece of real estate (but who is not holding herself out as an appraiser or offering appraisal

---

[5] In addition, the Communications Decency Act ("CDA") bars claims that treat Zillow as the "speaker" or "publisher" of information provided by a third party. 47 U.S.C. § 230(c)(1); *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008), *as amended* (May 2, 2008); *see also Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (holding AOL immune under the CDA for displaying inaccurate stock quotation provided by third party).

services) subject to the criminal penalties of the statute. *Id.* ¶ 17. Any such reading would run afoul of the First Amendment, as discussed above. If a newspaper publishes an opinion piece stating that homes in a new development are likely worth less than the builder claims, is that an "appraisal" and barred by IREALA? Plainly not.

Although a First Amendment carve-out from IREALA would certainly be justified for non-licensed speakers, the Court need not so determine, because on its own terms the statute does not apply to Zillow's publication of Zestimates. Plaintiffs' claim fails at the outset because IREALA does not provide for a private right of action, and none should be implied here. *See* 225 ILCS 458/15-5 (2009) (relief to be sought only by various state officials); *see also Abbasi ex rel. Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393 (1999) (denying private right of action when no clear need); 815 ILCS 505/2Z (2016) (listing 31 statutes—not including IREALA—the violation of which gives rise to an actionable violation of the Illinois consumer fraud act).

Further, even if Plaintiffs could bring a claim, IREALA applies to appraisals conducted for the specific purpose of supporting real estate financings. As context, after the S&L crisis, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 103 Stat. 183, was passed "to address the perception that over-valued appraisals had been partially responsible for the failure of many financial institutions in the 1980s and to address the concern that the absence of meaningful appraisal standards could threaten the future solvency of the federal deposit insurance Company." *Cobell v. Norton*, No. CIV.A.96-1285(RCL), 2003 WL 21978286, at *8 (D.D.C. Aug. 20, 2003); *see also ACORN v. Resolution Trust Corp.*, No. 90 C 4472, 1991 WL 93638, at *1 (N.D. Ill. May 22, 1991). Title XI of FIRREA established that the federal government will "monitor" the states' requirements for "certification and licensing of individuals who are qualified to perform appraisals in connection with federally related transactions." 12 U.S.C. § 3332. IREALA was enacted specifically "to be consistent with the

provisions of Title XI of" FIRREA.  225 ILCS 458/1-5 (2015).

Zillow is not within the intended scope of FIRREA or related state statutes such as IREALA because Zillow does not hold itself out as an appraiser, and a Zestimate home valuation by its terms cannot be used for real estate financings.  Appraisals within the scope of IREALA are conducted by licensed individuals who can visit the subject property and fully take into account its unique features.  Zillow expressly disclaims that the Zestimate has these characteristics or can be used for these purposes.  Compl. Ex. 6.

In addition, even with respect to those appraisers who are within the scope of IREALA, the statute itself expressly excludes "the procurement of an automated valuation model," 225 ILCS 458/5-5(g) (2015).  An automated valuation model is defined as:

> an automated system that is used to derive a property value
> through the use of publicly available property records and various
> analytic methodologies such as comparable sales prices, home
> characteristics, and historical home price appreciations.

*Id.*  Although Zillow is not subject to the IREALA, Zillow's Zestimate is plainly such a model, and Zillow is in the business of procuring (i.e., developing and acquiring services and information from) that model.  *See Procure, Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/procure (last visited June 13, 2017) (stating that the "legal definition of procure" is "to obtain, induce, or cause to take place").

## 2.  Plaintiffs Cannot State a Claim for Intrusion Upon Seclusion (Count II)

In Count II, Plaintiffs purport to plead a claim for the tort of intrusion upon seclusion, Compl. ¶ 30, which requires (1)"an unauthorized intrusion or prying into a plaintiff's seclusion" that (2) would be "highly offensive or objectionable to a reasonable person" regarding (3) "private" matters and (4)causes "anguish and suffering."  *Vega v. Chicago Park Dist*., 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013) (citing *Busse v. Motorola, Inc*., 351 Ill. App. 3d 67, 71 (1st Dist. 2004)).  "The third element requiring allegations of private facts is a 'predicate for the other

three.'" *Vega*, 958 F. Supp. at 959 (citing *Busse*, 351 Ill. App. 3d at 71).

Plaintiffs have not sufficiently pled any of the four elements, but their claim most clearly fails because Zillow did not use any "private facts"—matters such as "family problems, romantic interests, sex lives, health problems, [or] future work plans," or the contents of a person's mail, safe, or wallet; or banking information. *Vega*, 958 F. Supp. 2d at 959 (citing *Busse*, 351 Ill. App. 3d at 72). Instead, Zillow's speech fits well within the category of nonactionable "information furnished by the customers, standing alone—names, telephone numbers, addresses or social security numbers," and other "[m]atters of public record—name, address, date of birth and fact of marriage—[that] have been held not to be private facts." *Busse*, 351 Ill. App. 3d at 72 (citation omitted). Illinois law "distinguishe[s] personal information, such as names and social security numbers, from private facts, which are facially embarrassing and highly offensive if disclosed." *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 367 (1st Dist. 2010).

The complaint alleges that the information used by Zillow is either publicly available or user-provided. Compl. Ex. 6 ("The Zestimate is automatically computed daily based on millions of public and user-submitted data points."). These are not private facts. Count II thus fails. *See Busse*, 351 Ill. App. 3d at 71-72 ("Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved.").

### 3. Plaintiffs Cannot State a Claim Under the Illinois Uniform Deceptive Trade Practices Act (Count III)

In Count III, Plaintiffs purport to assert a claim under the Illinois Uniform Deceptive Trade Practices Act (the "IDTPA"), 815 ILCS 510/3 *et seq.* (1980). "[T]he primary focus of the IDTPA is to prevent unfair competition among competitors." *Kljajich v. Whirlpool Corp.*, No. 15 C 5980, 2015 WL 12838163, at *4 (N.D. Ill. Sept. 25, 2015). The IDTPA "'was not intended to be a consumer protection statute.'" *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 991 (N.D. Ill. 2006) (quoting *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 98

(1st Dist. 1992)).  Plaintiffs must show that Zillow "engaged in any of twelve enumerated types of deceptive conduct listed in Section 510/2" and that this conduct "will likely cause [them] to suffer damages in the future."  *Kljajich*, 2015 WL 12838163, at *4.

Plaintiffs allege that Zillow engaged in three of the statutorily-specified deceptive trade practices.  *See* Compl. ¶¶ 41-42.  But, first, the Zestimate cannot be treated as actionable deception, for the reasons discussed *supra* in Part III.B.1; and Zillow fully discloses the nature and uses of the Zestimate, *see, e.g.*, *supra* note 2, so consumers will understand and not be deceived by Zestimates.  Second, real estate agents' advertisements on Zillow are obviously advertisements;[6] there is nothing deceptive about their presence on the site, nor any need to disclose the inner workings of how Zillow obtains revenue from the agents.  Third, "the gathering, compiling, assessment and dissemination," Compl. ¶ 42, of information without property owners' consent is not "confusing" or "deceptive"—it is the exercise of Zillow's freedom to speak about real estate, a freedom that does not require anyone's permission.  Fourth, Zillow's refusal to remove listings when Plaintiffs objected is no more actionable than the refusal of a news site to remove its opinions about a business when the business objects.

Plaintiffs not only fail to identify actionable confusion resulting from Zillow's practices, they also do not allege how they will be harmed by these practices, as is also required to state an IDTPA claim.  Count III should therefore be dismissed.  *See Popp*, 244 Ill. App. 3d at 99 (dismissing IDTPA claim because it consists of the "bare conclusory allegation" of confusion, with "no allegations regarding what [plaintiff] is confused about"); *see also Aliano v. WhistlePig, LLC*, No. 14 C 10148, 2015 WL 2399354, at *5 (N.D. Ill. May 18, 2015) (dismissing IDTPA

---

[6] Even a cursory review of the presentation of advertisements on Zillow.com makes this clear, as Zillow includes the statement, "Learn how to appear as the agent above" below the advertisements, linked to a page that provides information about how agents may purchase advertising.  *See. e.g.*, Zillow, 1492 Willow Rd, Schaumburg, IL 60173 | MLS #09170758, https://www.zillow.com/homes/1492-Willow-Rd,-Schaumburg,-IL-60173_rb/ (last visited June 12, 2017).

claim because, "[e]ven construing the facts in Plaintiff's favor, its rank speculation regarding future customer behavior is insufficient to state a facially plausible claim for relief").

### 4. Plaintiffs Cannot State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV)

In Count IV, Plaintiffs repurpose their allegations into an asserted claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/10, *et seq*. (1986), alleging that Zillow's conduct was both deceptive and unfair. Neither theory works.

To sue for deceptive conduct, Plaintiffs must allege a deceptive act or practice. *Avery v. State Farm Mut. Auto. Ins. Co*., 216 Ill. 2d 100, 190 (2005). Here, as discussed above, *see supra* Part III.C.3 , Plaintiffs have not pled a deceptive act or practice. *Cf. Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *2 (N.D. Ill. May 16, 2013); *see also Galanis v. Starbucks Corp*., No. 16 C 4705, 2016 WL 6037962, at *2 (N.D. Ill. Oct. 14, 2016) (for statements to be found deceptive, they must "have misled a reasonable consumer . . . in light of the totality of the information made available to the plaintiff").

Plaintiffs also must allege actual injury and causation. *Avery*, 216 Ill. 2d at 190. But Plaintiffs have not pled actual injury, only hypothetical injuries that might occur in the future. Actual damage requires "actual pecuniary loss," which is not alleged here. *Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010); *see also Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 739 (7th Cir. 2014) (affirming dismissal of ICFA claim due to lack of injury); *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1008 (N.D. Ill. 2015) (speculative harm insufficient). Even if Plaintiffs had properly alleged harm, they have not pled how Zillow's conduct proximately caused their purported injuries. *See WhistlePig*, 2015 WL 2399354, at *3 (plaintiff must "allege and prove that the deceptive act proximately caused any damages").

To sue for unfair conduct, Plaintiffs must allege that a practice violates public policy, is

"so oppressive as to leave the consumer with little alternative except to submit to it," and injures the consumer. *Galvan v. Nw. Mem'l Hosp.*, 382 Ill. App. 3d 259, 265 (1st Dist. 2008). Zillow's conduct does not come anywhere close. "[B]are assertion of unfairness without describing in what manner the lack of disclosures either violate public policy or are oppressive is insufficient to state a cause of action." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 421 (2002) (dismissing ICFA claim because "there was a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness").

## IV. CONCLUSION

The First Amendment fully protects Zillow's publication of Zestimates and home facts and it bars imposition of the relief Plaintiffs seek. Even if the First Amendment did not apply, Plaintiffs fail to state any cognizable claim for relief. The Court should grant Zillow's motion and dismiss Plaintiffs' complaint with prejudice.

Dated: June 13, 2017

ZILLOW, INC. AND ZILLOW GROUP, INC.

By: /s/ Rebecca S. Engrav
     One of Their Attorneys

Eric D. Brandfonbrener, ARDC #6195674
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Tel: (312) 324-8400 / Fax: (312) 324-9400
ebrandfonbrener@perkinscoie.com

Rebecca S. Engrav, *admitted pro hac vice*
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-8000 / Fax: (206) 359-9000
rengrav@perkinscoie.com

Eugene Volokh, *admitted pro hac vice*
Mayer Brown LLP
350 South Grand Avenue, Suite 2500
Los Angeles, CA 90071
Tel: (310) 206-3926
evolokh@mayerbrown.com

135909667.5

-15-

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Barbara Andersen
ANDERSEN LAW LLC
2862 Commons Drive
Glenview, IL 60026
Tel: (708) 805-1123
bandersen@andersen-law.com

David A. Novoselsky
NOVOSELSKY LAW OFFICES
25 North County Street
Waukegan, IL 60085
Tel: (847) 782-5800
dnovo@novoselsky.com

C. Jeffrey Thut
NOONAN PERILLO & THUT LTD.
25 North County Street
Waukegan, IL 60085
Tel: (847) 244-0111
jthut@npt-law.com

By:     /s/ Rebecca S. Engrav

Rebecca S. Engrav, *admitted pro hac vice*
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-8000 / Fax: (206) 359-9000
rengrav@perkinscoie.com