**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VIPUL P. PATEL, et al., Individually and on Behalf of All Others Similarly Situated, ) ) ) Plaintiffs, ) ) v. ) ) ZILLOW, INC. and ZILLOW GROUP, INC., ) ) Defendants. ) | Case No. 17 C 4008 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

After the Court granted without prejudice Defendants Zillow, Inc.'s and Zillow Group, Inc.'s (collectively "Zillow") first motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] Plaintiffs brought the present two-count First Amended Class Action Complaint alleging violations of the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/2, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, against Zillow. Before the Court is Defendants' motion to dismiss brought pursuant Rules 12(b)(1) and (6). In the alternative, Defendants move to strike certain allegations under Rule 12(f), and further in the alternative, move to transfer venue as to certain named Plaintiffs to the Western District of Washington under 28 U.S.C. § 1404(a).

For the following reasons, the Court grants Zillow's Rule 12(b)(6) motion as to both Counts I and II of the First Amended Complaint. The Court grants Zillow's Rule 12(b)(6) motion with prejudice because the Court gave Plaintiffs the opportunity to re-allege their IDTPA and ICFA claims giving them guidance as to their claims' shortcomings in the Court's August

---

[1] The Court presumes familiarity with its August 23, 2017 Memorandum Opinion and Order granting Zillow's first Rule 12(b)(6) motion. [24].

23, 2017 Memorandum Opinion and Order granting Zillow's first Rule 12(b)(6) motion. The Court denies Zillow's remaining motions as moot.

## BACKGROUND

In the First Amended Class Action Complaint, Plaintiffs allege that they are current owners of real estate property located in Illinois and that their properties are listed on Zillow's website. (R. 28, First Am. Compl. ¶ 8.) Plaintiffs explain that Zillow engages in the business of providing advertising for real estate brokers and lenders through its internet website Zillow.com. (*Id.* ¶ 18, R. 28, Exs. 4, 6, 11, 21, 27, 38.) More specifically, in exchange for advertising monies paid to Zillow, real estate brokers and lenders are featured on Zillow's website. (*Id.*) The advertising includes links to these brokers on individual homes/properties, including but not limited to those of Plaintiffs and the putative class of Illinois homeowners. (*Id.*) Plaintiffs further contend that the brokers who pay Zillow for advertising space are given the name "premier agents" and the breadth of a premier agent's advertising is dependent on how much they pay to Zillow. (*Id.* ¶ 19.) These premier agents are displayed on active listings within a certain geographic/zip code radius, therefore, buyers or sellers who are reviewing a given property on Zillow.com can connect with and retain premier agents by clicking on the advertising link. (*Id.*) In addition, Zillow encourages premier agents to solicit "premier lenders" to advertise on Zillow's web page listings for active home/property listings. (*Id.*) Plaintiffs state that in exchange for the lenders' paid advertising, Zillow reduces the advertising amounts paid by the premier agents to Zillow to incentivize them to bring lenders to their website. (*Id.*)

Plaintiffs claim that Zillow engages in a confusing, unfair, and deceptive marketing scheme that impairs homeowners and sellers in relation to the sale of real estate. (*Id.* ¶ 21.) Specifically, Plaintiffs explain that in addition to the general advertising on its website, Zillow

has developed a marketing program called "Seller Boost" that involves premier agents as discussed above. (*Id*. ¶ 22.) In exchange for the additional advertising payment that the premier agents pay Zillow, Zillow promises "seller leads" in every zip code in which the Zillow premier agent operates. (*Id*.) Plaintiffs allege that Zillow draws sellers to its website by unilaterally posting information relative to a home-owners/seller's property without the advance permission of homeowners, including but not limited to, Plaintiffs and the putative class. (*Id.* ¶ 23.)

Furthermore, Plaintiffs contend that Zillow's website uses "Zestimates" to draw consumers and potential home sellers to Zillow.com. (*Id*. ¶ 24.) Zestimates are a valuation tool reflecting Zillow's estimated home value for individual homes determined by a computer algorithm. (*Id*. ¶¶ 27, 35; R. 28, Ex. 1, 10/13 Thompson Article.) The Zillow webpage information attached to the First Amended Complaint, along with other attachments incorporated by reference in the First Amended Complaint, indicate that a Zestimate "is calculated from public and user-submitted data," is "a starting point in determining a home's value" and "is not an appraisal." (Ex. 1, 10/13 Thompson Article; https://www.zillow.com/zestimate (last visited Mar. 26, 2018).[2] The webpage further states, "[w]e encourage buyers, sellers, and homeowners to supplement Zillow's information by doing other research such as" (1) "[g]etting a comparative market analysis (CMA) from a real estate agent"; (2) "[g]etting an appraisal from a professional appraiser"; and (3) [v]isiting the house[.]" (*Id*.) Under the frequently asked question ("FAQ") "Is Zestimate an Appraisal?", Zillow's webpage states:

---

[2] As the Court explained in its August 2017 ruling, when deciding a Rule 12(b)(6) motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). In their First Amended Complaint, Plaintiffs refer to Zillow's website, the website is central to Plaintiffs' claims, and Plaintiffs attach pages from Zillow's website to the First Amended Complaint. *See, e.g., Doermer v. Callen,* 847 F.3d 522, 526 (7th Cir. 2017).

> No. The Zestimate is not an appraisal and you won't be able to use it in place of an appraisal, though you can certainly share it with real estate professionals. It is a computer-generated estimate of the worth of a house today, given the available data. Zillow does not offer the Zestimate as the basis of any specific real-estate-related financial transaction. Our data sources may be incomplete or incorrect; also, we have not physically inspected a specific home. Remember, the Zestimate is a starting point and does not consider all the market intricacies that can determine the actual price a house will sell for.

(*Id*.)

In their First Amended Complaint, Plaintiffs allege that Zillow promotes Zestimates as an "accurate" opinion and "valuation tool" for prospective buyers. (*Id.* ¶ 27.) In doing so, it is the intention of Zillow that the prospective buyers rely on Zestimates as a valuable resource/opinion. (*Id*.) Plaintiffs also maintain that in its advertising, Zillow does not disclose to prospective purchasers that Zestimates are not based on actual market values, are not prepared by licensed Illinois appraisers, are based on subjective data, and are potentially flawed and often challenged by homeowners. (*Id*. ¶ 29.) Moreover, Plaintiffs assert that Zillow does not inform the general consumer public that it uses Zestimate as a marketing tool to draw home sellers and buyers to its website in an effort to connect them with Zillow's premier agents. (*Id*. ¶¶ 30, 34.) Similarly, Zillow does not tell the general public that it has a financial relationship with the premier agents, including that it makes revenue from advertisements purchased by premier agents and premier lenders displayed on Zillow's website. (*Id*. ¶ 31.) Also, Plaintiffs contend that Zillow does not advise the general consumer public that it perpetuates the Zestimate confusion by ignoring or refusing to delete or correct Zestimates that homeowners challenge as inaccurate or unfounded. (*Id*. ¶ 32.)

In relation to properties that are for sale by owner ("FSBO"), Plaintiffs assert that Zillow engages in unfair and deceptive advertising and trade practices to force or "funnel" FSBO sellers to use Zillow's premier brokers. (*Id*. ¶ 57.) Plaintiffs specifically allege that Zillow will

4

unilaterally list FSBO properties on its website and assign these properties a low Zestimate, but upon a premier broker listing the FSBO properties, the Zestimates "skyrocket." (*Id*. ¶¶ 60, 69.) Plaintiffs also allege that Zillow refuses to adjust Zestimates after FSBO sellers request well-founded changes to the low Zestimates. (*Id*. ¶¶ 63, 71.) Further, Plaintiffs contend that Zillow often lists FSBO properties as "suspect listings." (*Id*. ¶¶ 129, 135, 143.)

Next, Plaintiffs allege that Zillow's practice of creating and posting suspect Zestimates for seller's homes is unfair and violates public policy. (*Id*. ¶¶ 125, 127.) Specifically, Plaintiffs maintain that it is unfair for a seller to be unable to sell her home: (1) without the realistic ability to do so FSBO; (2) while being coerced by Zillow's "funneling" and improper trade practices to retain a real estate broker; (3) while Zillow offers opinions of value without proper due diligence and/or permission; and (4) while Zillow refuses to take down those opinions of value when challenged. (*Id*. ¶ 127.) Plaintiffs state that Zestimates and the additional improper trade practices are oppressive because of the confusion surrounding Zestimates and Zillow's refusal to cure unfounded Zestimates, along with the "suspect listing" label for FSBO sellers. (*Id*. ¶ 129.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *see also Roake v. Forest Preserve Dist. of Cook Cnty.*, 849 F.3d 342, 345–46 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*; *see also Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017). Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Park Pet Shop, Inc. v. City of Chicago,* 872 F.3d 495, 499 (7th Cir. 2017).

## ANALYSIS

**I.     IDTPA Claim – Count I**

In Count I, Plaintiffs seek injunctive relief, costs, and attorneys' fees under the IDTPA.[3] In particular, Plaintiffs contend that the Zestimate tool is a deceptive trade practice under 815 ILCS 510/2(a)(3) because Zillow promotes it as a reliable valuation resource when in reality it is "a suspect marketing gimmick" drawing people to its website to solicit advertising revenue from real estate brokers and lenders. (*Id.* ¶ 119(a).) Plaintiffs also assert that Zillow's refusal to resolve or remove challenged Zestimates in good faith is a deceptive trade practice because it: (a) perpetuates improper confusion in the marketplace in violation of 815 ILCS 510/2(a)(3); (b) constitutes an improper and bad faith disparagement of Plaintiffs' properties in violation of 815 ILCS 510/2(a)(8) due to the existence of information that undermines the validity of certain Zestimates; and (c) constitutes advertisements of real property with the intent to not sell as advertised in violation of 815 ILCS 510/2(a)(9). (*Id*. ¶ 119(b).) In addition, Plaintiffs allege that Zillow's "suspect listing" designation for FSBO properties constitutes a deceptive trade practice

---

[3] In their response brief, Plaintiffs' arguments in support of their IDTPA claims consist of approximately two pages containing citations to authority with little or no analysis in relation to the sections of 815 ILCS 510/2(a) upon which they rely, as well as a threadbare discussion on their alleged future harm.

6

in violation of 815 ILCS 510/2(a)(3), (8) and (9) because there is no good faith reason to label FSBO properties this way. (*Id.* ¶ 119(c).)

"Illinois enacted the Deceptive Practices Act in 1965 to define and prohibit deceptive trade practices and unfair competition." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 9 (1st Dist. 2009). "Notwithstanding the DTPA's primary focus on acts between competitors," *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 98 (1st Dist. 1992), its purpose is also to enjoin trade practices that confuse or deceive consumers. *See ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 952 (N.D. Ill. 2016). Accordingly, although the IDTPA "was not intended to be a consumer protection statute," *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.,* 451 F. Supp. 2d 982, 991 (N.D. Ill. 2006), consumer claims are actionable if the plaintiff alleges "facts which would indicate that he is likely to be damaged in the future." *Reid v. Unilever U.S., Inc.,* 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013) (citation omitted); *see also Vincent v. City Coll. of Chicago*, 485 F.3d 919, 925 (7th Cir. 2007) (IDTPA "authorizes only prospective relief").

Under the IDTPA, Plaintiffs must show that Zillow engaged in one of the types of deceptive conduct enumerated in the statute. *See* 815 ILCS 510/2(a); *Int'l Star Registry,* 451 F. Supp. 2d at 991. In their First Amended Complaint, Plaintiffs contend that they have sufficiently alleged deceptive trade practices under the following statutory provisions:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
> …
>> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
>> …
>> (8) disparages the goods, services, or business of another by false or misleading representation of fact;

7

>> (9) advertises goods or services with intent not to sell them as advertised;
>
> …
>
> (11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
>
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

(First Am. Compl. ¶ 16.); 815 ILCS 510/2(a)(3), (8)-(9), (11)-(12). Under the IDTPA, Plaintiffs need not prove actual confusion or misunderstanding to ultimately prevail. *See* 815 ILCS 510/2(b); *see also Cook v. Green Tree Servicing, LLC,* 154 F. Supp. 3d 742, 752 (S.D. Ill. 2016); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill.App.3d 849, 865 (1st Dist. 2008).

As discussed in the Court's August 23, 2017 ruling, Plaintiffs' reliance on Zestimates alone to support their deceptive trade practice claim failed because Zestimates are not false or misleading representations of fact likely to confuse consumers. More specifically, based on Plaintiffs' allegations and statements made on Zillow.com, Zestimates are merely an estimate of the market value of a property – as supported by Zillow.com's statements that Zestimates may not be accurate. Also, Zestimates are nonactionable opinions of value. *See Brown v. Skyline Furniture Mfg., Inc.*, No. 17-cv-1244, 2017 WL 2536590, at *2 (N.D. Ill. June 12, 2017) ("Generally, an expression of opinion does not constitute a statement of fact and therefore cannot support an action for fraud."); *Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co.,* No. 15 C 9677, 2016 WL 1073096, at *2 (N.D. Ill. Mar. 18, 2016) (commercial disparagement claim under 815 ILCS 510/2(8) must be based on a "false or misleading representation of fact."); *Sampen v. Dabrowski*, 222 Ill.App.3d 918, 924-25 (1st Dist. 1991) (explaining that where a valuation was explicitly labeled an estimate, there was no deception); *Hartigan v. Maclean*

*Hunter Publ'g Corp.*, 119 Ill.App. 3d 1049, 1059 (1st Dist. 1983) ("If clearly labeled as an opinion a qualitative evaluation of worth is not a violation of the Act. The Act prohibits deception rather than error.").

That being said, some of Plaintiffs' claims in their First Amended Complaint rely on more than the Zestimate tool. Plaintiffs, for example, allege that Zestimates cause confusion because Zillow promotes the Zestimate tool as a reliable valuation resource when in reality it is "a suspect marketing gimmick" drawing people to its website to solicit advertising revenues. Plaintiffs also point to Zillow's alleged refusal to resolve challenged Zestimates asserting that this refusal constitutes an improper and bad faith disparagement of Plaintiffs' properties and constitutes "bait and switch" advertising. Further, Plaintiffs allege that Zillow's "suspect listing" designation for FSBO properties constitutes a deceptive trade practice because there is no good faith reason to label FSBO properties this way.

Although Plaintiffs allege that Zillow has created some confusion in relation to the Zestimate tool's real purpose, these allegations do not describe the type of confusion the IDTPA prohibits. *See ATC Healthcare Servs.,* 192 F.Supp.3d at 953. Simply put, Plaintiffs' allegations are not a good fit under the IDTPA's enumerated categories, especially those that primarily concern unfair competition between businesses, such as § 510/2(a)(3). *See, e.g., Chicago's Pizza, Inc.*, 384 Ill.App.3d at 866; *see also LG Elecs. v. Whirlpool Corp.,* No. 08 C 242, 2010 WL 3521785, at *2 (N.D. Ill. Sept. 1, 2010) ("Illinois courts have ... recognized that the Uniform Deceptive Trade Practices Act ("UDTPA") has codified most aspects of the common law tort of unfair competition.") (citation omitted). To clarify, the term "likelihood of confusion" under the IDTPA has the same meaning as it does in federal trademark actions and exists "when the defendant's use of a deceptive trade name, trademark, or other distinctive symbol is likely to

9

confuse or mislead consumers as to the source or origin of the product or service." *ATC Heathcare Servs.*, 192 F.Supp.3d at 953 (citation omitted); *see also Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 09179, 2017 WL 1436965, at *3 (N.D. Ill. Apr. 24, 2017) ("courts have found that '[c]laims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.'") (citation omitted). The seller can avoid confusion by identifying its product or service "in such a way that 'purchasers exercising ordinary care to discover whose products they are buying will know the truth and not become confused or mistaken.'" *ATC Healthcare Servs.*, 192 F. Supp. 3d at 953 (citation omitted). Here, Plaintiffs' allegations do not involve confusion between Zillow's and another's products or services. *See McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1174 (7th Cir. 1986). Instead, Plaintiffs allege that the Zestimate caused "confusion in the marketplace" because "it is promoted as a reliable and valuable valuation resource," yet it is merely a "suspect marketing gimmick." (First Am. Compl. ¶ 119(a).) Even when viewing the allegations in a light most favorable to Plaintiffs, they fail to assert the type of confusion among products or services that is actionable under the IDTPA. [4]

Plaintiffs' allegations under § 510/2(a)(9) fare no better. In particular, Plaintiffs contend that the alleged deceptive conduct amounts to "bait and switch" advertising, which applies when a seller makes "an alluring but insincere offer to sell a product or service which the advertiser in

---

[4] Plaintiffs also allege that Zillow funnels different groups of homeowners – who are upset with their Zestimates – to premier agents rather than to customer service employees based on the "I disagree" function under the Zestimate on Zillow.com. (First Am. Compl. ¶¶ 36, 37.) Plaintiffs further allege that the "I disagree" function confuses homeowners/sellers. (*Id.* ¶ 38.) Plaintiffs, however, do not address their "I disagree" allegations in their legal memorandum. *See Goodpaster v. City of Indianapolis,* 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because [plaintiffs] did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these claims are waived."). Moreover, that Plaintiff homeowners/sellers were confused does not speak to consumer confusion under the IDTPA. *See Aliano v. Louisville Distilling Co., LLC,* 115 F. Supp. 3d 921, 928 (N.D. Ill. 2015) (purpose of IDTPA is to enjoin "trade practices which confuse or deceive the consumer.") (citation omitted).

truth does not intend or want to sell." *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014) (citation omitted); *see also Allergy Asthma Tech., Ltd. v. I Can Breathe, Inc.*, 195 F. Supp. 2d 1059, 1072 (N.D. Ill. 2002). The purpose of such advertising "is to switch customers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser." *Goldberg,* 755 F.3d at 461. Viewing the allegations and all reasonable inferences in their favor, Plaintiffs do not allege that Zillow is baiting consumers to buy its products or services, after which Zillow attempts to sell them a more expensive item. *See Allergy Asthma Tech.,* 195 F. Supp.2d at 685 ("Plaintiff fails to allege the 'switch' by defendant" because "[d]efendant's employees made no attempt to sell plaintiff a more expensive item."). Instead, Plaintiffs assert that Zillow (1) insincerely posts unlisted and FSBO homes with low Zestimates to lure homeowners and sellers to its website, and (2) once the homeowners are "engaged," Zillow funnels the homeowners to premier brokers. In short, that Zillow's alleged marketing gimmick may be insincere does not support a "bait and switch" claim under the IDTPA – even when drawing all reasonable inferences – because Plaintiffs do not allege that Zillow baited them with a product or service and then switched to a more expensive one. Therefore, Plaintiffs' § 510/2(a)(9) allegations fail to state a claim under the federal pleading standards. *See Catinella v. Cnty. of Cook, Ill.,* 881 F.3d 514, 517 (7th Cir. 2018) ("At a minimum the complaint 'must give enough details about the subject-matter of the case to present a story that holds together.'") (citation omitted).

Next, under § 510/2(a)(8), defendants are prohibited from disparaging the quality of a plaintiff's goods, services, or business through false or misleading representations of fact. *See ATC Healthcare Servs.*, 192 F. Supp. 3d at 952; *Kole v. Vill. of Norridge,* 941 F. Supp. 2d 933, 963 (N.D. Ill. 2013); *see also Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.

11

Supp. 2d 704, 710 (N.D. Ill. 2006) (IDTPA "codified the common law tort of commercial disparagement"). As discussed, Zestimates themselves are not false or misleading representations of fact likely to confuse consumers because they represent opinions of value. Indeed, in their First Amended Complaint, Plaintiffs characterize Zestimates as opinions. (First Am. Compl. ¶¶ 27, 127, 134.) Meanwhile, Plaintiffs fail to point to any actionable disparaging statements or representations that are untrue. *See Universal Gaming Grp. v. Taft Stettinius & Hollister LLP,* No. 1-15-0878, 2017 WL 1240860, at *8 (1st Dist. Mar. 31, 2017) ("a commercial disparagement claim must plead false statements, and cannot be based on 'expressions of opinion.'"). Rather, Plaintiffs argue that "disparaging advertisements are also actionable under the IDTPA" citing § 510/2(a)(8), (11), and (12). In support of this bare-boned argument, Plaintiffs cite a Seventh Circuit case analyzing what constitutes "commercial advertising or promotion" under the Lanham Act. *See Neuros Co. v. KTurbo, Inc*., 698 F.3d 514, 521 (7th Cir. 2012);15 U.S.C. § 1125(a)(1)(B)). In doing so, the Seventh Circuit rejected the argument that "advertising or promotion" is limited to published or broadcast materials. *Id.* at 521-22. It appears that Plaintiffs are relying on *Neuros* from the proposition that Zillow's statements or representations constitute commercial advertising for IDTPA purposes – a proposition that Zillow does not challenge. Plaintiffs also cite – without explanation – a district court case where a plaintiff's IDTPA claim survived the defendant's Rule 12(b)(6) motion to dismiss due to allegations that the defendant made false and deceptive representations to the plaintiff's customers about the plaintiff's services. *See Pagoda Enter. Inc. v. DHL Express, Inc.,* No. 04 C 6497, 2005 WL 1563120, at *2-3 (N.D. Ill. Jan. 18, 2005); *see also* 04 C 6947, R. 1, Compl. ¶¶ 28, 29. Unlike the plaintiff in *Pagoda*, Plaintiffs have failed to sufficiently allege any false or deceptive representations. Without more, Plaintiffs' argument is undeveloped and

12

unsupported by pertinent legal authority. *See United States v. Cisneros,* 846 F.3d 972, 978 (7th Cir. 2017) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation omitted).

In addition, Plaintiffs contend that Zillow's conduct is self-dealing in violation of § 510/2(a)(12) because it funnels FSBO homeowners to premier brokers. *See Kirkruff v. Wisegarver*, 297 Ill. App. 3d 826 (4th Dist. 1998). To give context, in Illinois, real estate brokers owe a duty to exercise good faith in their dealing with purchasers. *See Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 162 (1st Dist. 1986). In *Kirkruff*, the Illinois Appellate Court held that a real estate broker's failure to disclose he was not acting solely on behalf of the plaintiffs constituted self-dealing under § 510/2. *Id*. at 840. The appellate court based its conclusion on well-settled Illinois law that "[r]eal estate brokers occupy a position of trust with respect to the purchasers with whom they negotiate" and "[t]hey owe a corresponding duty to exercise good faith and to disclose any personal interest in property they list for sale." *Seligman v. First Nat. Investments, Inc.,* 184 Ill. App. 3d 1053, 1064 (1st Dist. 1989). It is undisputed that Zillow is not a real estate broker, and thus has no such duty under the law. Moreover, Plaintiffs fail to allege or argue any other basis for imposing a fiduciary duty. Therefore, Plaintiffs' self-dealing claim is without merit.

Further problematic are Plaintiffs' allegations regarding the likelihood of future harm. *See ATC Healthcare Servs., Inc. v. RCM Techs., Inc.,* 282 F.Supp.3d 1043, 1050 (N.D. Ill. 2017) ("The likelihood of future harm occurring absent an injunction is an element of liability on the claim, not merely a separate element of damages."). As Judge Shadur explained over a decade ago, "[i]n consumer actions, proving the likelihood of future harm is difficult because once the consumer has knowledge about the defendant's actions, it can easily protect itself in the future by

avoiding the harm." *Int'l Star Registry,* 451 F. Supp. 2d at 991; *see, e.g., Howard v. Chicago Transit Auth.*, 402 Ill. App. 3d 455, 462 (1st Dist. 2010).

Here, Plaintiffs' allegations make clear that they are aware of the alleged deceptive conduct in which Zillow engages. (First Am. Compl. ¶¶ 39-41, 54, 59-73, 89-100.) As such, even if Plaintiffs were confused or misled in the past, based on the allegations in the First Amended Complaint, Plaintiffs are no longer at risk of future confusion. In short, as consumers, they face no risk of future harm. *See Camasta,*, 761 F.3d at 740 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.") (internal quotations and citations omitted); *see, e.g., IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, No. 15 C 9955, 2017 WL 6625987, at *10 (N.D. Ill. Dec. 28, 2017); *see also Kljajich v. Whirlpool Corp.,* No. 15 C 5980, 2015 WL 12838163, at *5 (N.D. Ill. Sept. 25, 2015) ("[l]ack of future damages is a problem in 'most' IDTPA consumer actions because once a plaintiff is aware of the truth behind the deceptive marketing, it can simply refrain from purchasing the product.") (citation omitted).

To the extent Plaintiffs are claiming harm based on the confusion of others, their allegations are vague and conclusory. *See, e.g., In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 960 (N.D. Ill. 2016). Specifically, Plaintiffs allege that although they are aware of "the confusing and deceptive nature of the Zestimate and additional deceptive trade practices, prospective buyers of Plaintiffs' properties still remain in the dark" and Defendants' "Zestimate and their additional deceptive trade practices will continue to cause confusion and thwart Plaintiffs' efforts to sell their respective properties." (First Am. Compl. ¶ 117.) These threadbare allegations – examined in Plaintiffs' favor – fail to present sufficient facts to plausibly suggest that Zestimates will cause consumers not to buy Plaintiffs' properties and that Plaintiffs

14

will not be able to sell their homes at their true market value. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). In sum, Plaintiffs' speculative allegations based on marketplace confusion do not sufficiently identify future harm. *See Camasta,* 761 F.3d at 740. The Court therefore grants with prejudice Zillow's Rule 12(b)(6) motion to dismiss Plaintiffs' IDTPA claim as alleged in Count I of the First Amended Complaint.

## II.     ICFA – Count II

In Count II, Plaintiffs seek damages, costs, punitive damages, and attorney's fees based on Zillow's alleged violations of the ICFA. Plaintiffs specifically argue "[g]iven that Zillow is admittedly engaged in advertising and financially benefits from the listing of Illinois residents' properties, it is subject to the ICFA." (R. 37, Resp., at 4.)

"The ICFA provides a remedy for consumers who have been victimized by deceptive or unfair business practices." *Newman v. Metro. Life Ins. Co.*, 881 F.3d 987, 994 (7th Cir. 2018). Specifically, the ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416 (Ill. 2002)). The ICFA covers both unfair and deceptive conduct. *See Siegel,* 612 F.3d at 935 ("A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive."). "The elements of a claim under the ICFA are: '(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiffs rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Wigod v.*

15

*Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012) (citation omitted). In addition, "an action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta,* 761 F.3d at 739. In bringing an ICFA claim based on deceptive conduct, a plaintiff must plead his claim with particularity in accordance with Rule 9(b). *See id*. at 738; *Halperin v. Int'l Web Servs., LLC,* 123 F. Supp. 3d 999, 1006 (N.D. Ill. 2015).

### A. Unfair Business Practices

Plaintiffs allege that Zillow engages in an unfair marketing scheme that impairs home owners and sellers relative to the sale of their homes. In particular, they allege that Zillow's practice of creating and posting unlicensed and suspect Zestimates against their homes constitutes an unfair business practice. "Unfairness under the ICFA depends on three factors: '(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers.'" *Newman,* 881 F.3d at 996 (citation omitted). "A significant showing that any of the three factors is met is enough; so too are facts that, to a lesser degree, satisfy all three." *Id.* In addition, "to establish harm under ICFA, a plaintiff must show 'that [s]he suffered substantial injury, and that [s]he could not avoid this injury.'" *Toulon v. Cont'l Cas. Co.,* 877 F.3d 725, 741 (7th Cir. 2017) (quoting *Siegel*, 612 F.3d at 937).

Because Plaintiffs' theory of liability relates to Zillow's business practices affecting potential home buyers – the "consumers" for purposes of this ICFA claim are the home buyers, not Plaintiffs. *See* 815 ILCS 505/1(e) (defining "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"). As discussed in the Court's

16

August 2017 ruling, non-consumers, such as Plaintiffs, may sue under the ICFA if they allege (and ultimately prove) the nexus between the objectionable conduct and the consumer injury or harm. *See GC2 Inc. v. Int'l Game Tech. PLC,* 255 F. Supp. 3d 812, 823 (N.D. Ill. 2017) ("A non-consumer plaintiff suing under the IFCA must prove that there is a nexus between the alleged fraud and consumer injury."); *Liston v. King.com, Ltd.,* 254 F. Supp. 3d 989, 1005 (N.D. Ill. 2017) ("courts have also allowed non-consumers … to go forward with ICFA claims where they satisfy the 'consumer nexus' test."); *see also Community Bank of Trenton v. Schnuck Markets, Inc.,* 887 F.3d 803, 823 (7th Cir. 2018) (courts are skeptical of ICFA claims when the parties are not consumers to the transaction). In general, "a non-consumer plaintiff must allege 'conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Roppo v. Travelers Co.,* 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015) (citation omitted). Put differently, "[t]o implicate consumer protection concerns, there must be a connection between the alleged misconduct and the wider marketplace, as well as a connection between the requested relief and consumers generally." *ATC Healthcare Servs., Inc.*, 282 F. Supp. 3d at 1051 (citing *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.,* 298 Ill.App.3d 146, 159 (2d Dist. 1998)). Under the consumer nexus theory, non-consumers, like Plaintiffs, must eventually establish "(1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations … concerned consumers other than themselves; (3) how defendant's particular [conduct] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Brody,* 298 Ill. App. 3d at 160; *see also GC2 Inc.,* 255 F. Supp. 3d at 823; *Liston,* 254 F.Supp.3d at 1006.

17

Examining Plaintiffs' allegations and all reasonable inferences in their favor, they have failed to plausibly allege that their actions were akin to consumers' actions because Plaintiffs are selling real estate, and thus are not the potential buyers. *See, e.g., Kmak v. Sorin Group Deutschland,* No. 17 CV 4759, 2017 WL 8199974, at *9 (N.D. Ill. Dec. 12, 2017). Furthermore, Plaintiffs' requested relief would not serve the interests of consumers because the actual damages they seek are costs incidental to their inability to sell their homes, including mortgage payments, taxes, home owner association costs, utilities, and home maintenance costs. (First Am. Compl. ¶¶ 138, 139, 142.) Simply put, Plaintiffs' allegations do not adequately state how Zillow's alleged unfair business practices harm consumers. *See Roppo*, 100 F. Supp. 3d at 651; *see also Iqbal*, 556 U.S. at 678 (a complaint is plausible on its face when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Plaintiffs, for example, do not allege that the prospective buyers as consumers will have to pay incidental out-of-pocket expenses related to Zillow's Zestimate advertising. Rather, Plaintiffs focus on their inability to sell their homes due to Zestimates and the incidental costs they have incurred. Because Plaintiffs have failed to sufficiently allege their unfair practices claim under the federal pleading standards, the Court grants Zillow's motion to dismiss Plaintiffs' unfair business practice claim as alleged in Count II with prejudice.

### B.    Deceptive Business Practices

Next, Plaintiffs allege that Zillow engages in deceptive advertising to consumers, who are prospective purchasers of Plaintiffs' real estate property. To state an ICFA deceptive practices claim, a plaintiff must allege that he suffered actual damages that defendant's deception proximately caused. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) ("the deceptive act must have been the 'but-for' cause of the damage"); *Toulon*, 877

F.3d at 739. In other words, "in a case alleging deception under the Act, it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 200 (Ill. 2005) (citation omitted); *see also Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 832 (N.D. Ill. 2009), *aff'd*, 612 F.3d 932 (7th Cir. 2010) ("a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception.").

Setting aside Plaintiffs' failure to allege a consumer nexus to their claims, Plaintiffs do not allege that Zillow's omissions or representations deceived them. As discussed above, Plaintiffs' allegations show that they were abundantly aware of the alleged deceptive conduct. (First Am. Compl. ¶¶ 39-41, 54, 59-73, 89-100.) Under Illinois law, a plaintiff who knows "knows the truth" does not have a valid ICFA deceptive practice claim. *See Haywood*, 887 F.3d at 333 (citing *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 267 Ill.Dec. 14, 776 N.E.2d 151, 164 (2002)). Simply put, Zillow's conduct did not proximately cause any injury to Plaintiffs because its conduct did not deceive Plaintiffs in the first instance. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) ("those who 'knew the truth' do not have valid ICFA claims because they cannot claim to have been deceived"). Therefore, Plaintiffs have failed to allege their ICFA claim based on Zillow's alleged deceptive practices. Instead, under the circumstances, Plaintiffs have pleaded themselves out of court by alleging facts that defeat their claim. *See Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).[5]

---

[5] Because Plaintiffs' claims fail under Illinois statutory law, the Court need not address Zillow's First Amendment arguments. *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013) ("[C]ourts should avoid unnecessary constitutional adjudication."); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("[F]ederal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions.").

## CONCLUSION

For the foregoing reasons, the Court grants Zillow's Rule 12(b)(6) motion to dismiss with prejudice and dismisses this lawsuit in its entirety.

**DATED:** May 7, 2018

                                         ENTERED

                                         *[signature]*

                                       **AMY J. ST. EVE**
                                       **United States District Court Judge**